## Sun Life Assur. Co. of Canada v. Dalton.

May 14, 1946.

As modified on denial of rehearing October 4, 1946.

Wheeler & Shelbourne for appellant.

L. B. Alexander for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

By agreement of the litigants, this case was submitted to the trial court without the intervention of a jury, and upon rendition of a judgment for $1500 in favor of Wanda Sutherland Dalton, appellee, as beneficiary under a group policy contract, the insurer, Sun Life Assurance Company of Canada, appellant, perfected this appeal.

The sole question before us for present determina-

tion is the legal propriety of appellee's judgment as it is viewed in light of the terms of the policy contract which was outstanding among the parties in interest.

In 1932, Illinois Central System, an organization in the railroad industry, purchased life insurance coverage for its regular employees in the age group between fourteen and seventy years who might elect to take such protection. This insurance protection was embodied in the terms of a group policy that was issued by appellant insurer to the railroad employer. Such policy terms were also reflected in a limited degree in an individual employee's certificate that was issued to each employee that elected to come within the offered protection of the group contract. Each eligible employee electing to take the insurance did so by making his own application for it and by signing an authorization card directing the railroad employer to deduct monthly from his wages a sum sufficient to satisfy his individual contribution to the total premium charge payable to the insurer upon the overall contract. The employer itself made its own contribution to the total premium, thereby making this arrangement with the insurer a joint enterprise on the part of the employer in cooperation with its employees.

This group policy contained a termination clause that provided that the insurance for any covered employee would cease "at the due date of the premium to which such employee has failed to make a required contribution."

Edward C. Sutherland, Jr., a young man of 21 years, went to work for the railroad employer on January 14, 1935, and elected to participate in the benefits and burdens of this group insurance arrangement. He received an individual employee's certificate showing that his life was insured by appellant for $1500 and that his mother was the beneficiary, this being subsequently changed to the present appellee after he had made the latter his wife.

Sutherland was engaged in the active service of the railroad employer with a bridge crew until February 28, 1937, when he received an involuntary, temporary layoff order that was caused by necessary repairs on the equipment used by the bridge crew. All of the bridge crew were thereafter recalled to active service following com-

pletion of the repairs, that is all except Sutherland who was accidently killed on April 2, 1937, during the layoff period. According to undisputed evidence, Sutherland's status was that of an inactive employee, temporarily suspended for the employer's own convenience but subject to recall, during the 33 day period between the last day of his active service and the day of his death. He had made his regular monthly contributions to the policy's overall premium payment for more than two years during the period of his active employment prior to his death. However, between February 28, 1937, when he was involuntarily and temporarily laid off, and the date of April 2, 1937, when he was killed, he made no individual contribution of his own payment to the premium that was payable by the railroad employer to the insurer. He was not working in that particular period and accordingly no deduction from his wages was possible. Neither did he go to any of his employer's offices and pay his monthly contribution out of his own cash reserves. Notwithstanding this failure of any individual contribution by Sutherland, the railroad itself paid the full and regular monthly premium to the insurer, including Sutherland's individual and proportionate part. Then about the last of April in 1937, after Sutherland had been dead about a month, the railroad employer notified the insurer in writing that Sutherland's employment had ceased as of February 28, 1937, and that his insurance was accordingly cancelled. Upon receiving that notification, the insurer cancelled the Sutherland insurance on April 29, 1937, 27 days after Sutherland's death, making the effective date of cancellation as of February 28, 1937.

The insurer refused to pay Sutherland's death benefit to appellee beneficiary on the ground that Sutherland had failed to make his required monthly premium contribution which became due and payable during the period between February 28, 1937, and April 2, 1937. The insurer took the position that Sutherland's failure of contribution during that period caused a cessation of the insurance coverage upon his own life. This action for recovery of $1500 on the policy followed the insurer's refusal to pay the death benefit claimed by appellee beneficiary.

The fundamental undertaking of this contract was

to provide life insurance upon the lives of this employer's regular employees within a specified age group. The three basic requirements for those insured under the provided coverage were: (A) Employment with this railroad, (B) age status between fourteen and seventy, and (C) regularity of that employment status. The insurer was only interested in eliminating the hazard of any employment activity of its insured group that might be outside the scope of this particular industry and also in eliminating the hazard of mortality experience that might lie outside the age group between fourteen and seventy years. The profits for the insurer in the premium payable on this group policy were calculated and determined solely on the basis of eliminating those two hazards, viz., (1) industrial activity not included in the operations of this railroad business and (2) indiscretion of employees under fourteen years of age and infirmity of employees over seventy years of age. The certainty or uncertainty of the premium payment personally by the employee was, in our opinion, not a subject of any importance or consideration in the formation of this contractual relationship. The premium payment to the insurer was secured by the resources and financial stability of this great railroad system. The only possible reason for providing in the policy that the insurance would be terminated as to any individual employee upon his failure to make a required contribution lay in the desire of the insurer to understand at all times that the persons covered by the insurance policy were limited to the employees of this railroad system. In other words, the failure of any contribution of a covered railroad employee would serve as a red signal of danger to indicate that the comparatively good risk of railroad employment, the hazards of which were at least known, had ceased to exist because the covered employee had gone out into the unknown hazards of some other employment, for example, that of a paratrooper in time of war.

The insurer never lost one trivial cent because of the failure of contribution by Sutherland. The railroad paid the insurer the full premiums, including Sutherland's part, at all times when they became due. The insurer had no interest whatever in Sutherland's contribution, except insofar as it served to broadcast a warning to the insurer that this railroad employment and its

accompanying risk had ceased to exist and had possibly been supplanted by some other employment with an unknown risk or perhaps with a more hazardous risk of some entirely different activity.

The crucial factor in determining the existence or non-existence of this insurance coverage on the date of Sutherland's death is that of the reality of his employment with this railroad at that particular time. The fundamental consideration is not Sutherland's contribution to the premium payable on the policy but rather his employment status. The contribution was taken care of by Sutherland's good friend, the railroad company, which chose to meet that responsibility for him until such time as he should return to active service. If a payment is owed on insurance, whether fire, auto, life or windstorm, and if some Mr. Croesus Greatheart decides to meet that payment on behalf of a failing and absent policyholder, we see no valid ground for complaint by the insurer. The insurer does not care who pays. The insurer only wants to know the risk.

The risk of this insurance policy was that of railroad employment. That risk never changed. All the evidence in the case established the railroad employment of Sutherland, either in active or inactive status until the date of his death. The mere fact that a railroad employee becomes temporarily laid off without his own choice does not sever his employment relationship. Prudential Ins. Co. of America v. Bridgman, 256 Ky. 575, 76 S. W. 2d 639.

An enforcement of the letter rather than of the broad spirit of this contract, especially the letter of that rather picayunish provision about a contribution by the employee, would work a real injustice in this case. It would have the effect of deciding that insurance may become forfeited when an insured overlooks payment of the premium, even though the premium may have been entirely satisfied by another in the insured's behalf when it became due. Such a theory in all our relations would entirely abrogate the principle of eternal salvation as pronounced by the Christian religion, that is salvation by grace and by the shifting of the burden of condemnation through the sacrifice of another.

Looking at the coverage of this insurance from the

standpoint of the insured's employment with this railroad and conceiving that such employment was in real existence at the time of the insured's death, we now hold that the judgment of the trial court for appellee was entirely legal, just, proper and free from error.

Judgment affirmed.